TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MAXWELL K. COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Deputy Chief, National Security Division
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1785
    E-mail:   maxwell.coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

3/10/26

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MRV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>SCOTT ALLEN SIMPKINS,<br><br>       Defendant. | No. CR  2:26-cr-00133-SVW<br><br>PLEA AGREEMENT FOR DEFENDANT SCOTT ALLEN SIMPKINS |

1.   This constitutes the plea agreement between SCOTT ALLEN SIMPKINS ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of certain acts committed by defendant in effort to obstruct justice. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

///

///

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with obstruction of justice, in violation of 18 U.S.C. § 1503.

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest the Factual Basis agreed to in this agreement.

2

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in the single-count Information, that is, obstruction of justice, in violation of Title 18, United States Code, Section 1503(a), the following must be true:

a. Defendant influenced, obstructed, or impeded, or tried to influence, obstruct, or impede a proceeding before a federal court or grand jury;

b. Defendant acted "corruptly," meaning he knowledge of the proceeding before a federal court or grand jury proceeding and acted with an intent to obstruct it. A defendant acts with an intent to obstruct a proceeding before a federal court or grand jury if his actions have the natural and probable effect of interfering with that proceeding.

c. The government must prove that defendant's actions were material. That is, they must bear some reasonable relationship to the subject matter of the investigation and not be immaterial to the investigation.

d. The government need not prove that defendant's sole or even primary intention was to obstruct justice so long as the

3

government proves beyond a reasonable doubt that one of defendant's intentions was to obstruct justice. Defendant's intention to obstruct justice must be substantial.

PENALTIES AND RESTITUTION

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1503(a) is: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant to this Factual Basis, defendant SCOTT ALLEN SIMPKINS, LASD Deputy Christopher Cadman ("Deputy Cadman"), and LASD Deputy Eric Chase Saavedra ("Deputy Saavedra") were sworn law enforcement officers employed by the Los Angeles County Sheriff's Department ("LASD").  As LASD deputies, defendant SIMPKINS, Deputy Cadman, and Deputy Saavedra were subject to an oath of duty and rules of conduct.

Defendant SIMPKINS was a deputy assigned to LASD's Lakewood Station and worked for the Special Enforcement Bureau and the SWAT team.  Defendant knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

Deputy Saavedra owned and operated a company called Saavedra &

6

Associates LLC ("Saavedra & Associates") that provided private security services for clients and often employed active LASD deputies and law enforcement officers.  Defendant SIMPKINS worked approximately six to eight shifts for Saavedra & Associates as a private security guard and received cash payments in return for his services.

***Defendant Works Private Security for Party at Adam Iza's Mansion***

In or around August 2021, Adam Iza ("Iza"), also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo," engaged defendant SIMPKINS and Deputy Cadman, and other law enforcement officers, to provide private security for him.  Specifically, Iza required security for a party at his mansion residence in the Bel Air neighborhood of Los Angeles.  The party was held on the night of August 14, 2021.  Defendant SIMPKINS and Deputy Cadman worked as private security guards for the event.  At the time, defendant SIMPKINS was aware that Iza had possession of one or more firearms.

After the event ended, at around 3 or 4 a.m. on August 15, 2021, defendant SIMPKINS learned that the party planner, Victim R.C., had been kicked out of the party for erratic behavior.

***Defendant Returns to Iza's Mansion and Encounters Victim R.C.***

The next day, on August 16, 2021, defendant SIMPKINS agreed to work another shift for Iza and arrived at Iza's mansion.  Upon arriving, Defendant SIMPKINS learned that Victim R.C. was on his way to the residence.  Defendant SIMPKINS was carrying a firearm holstered and visible.

When Victim R.C. arrived, defendant SIMPKINS and Deputy Cadman escorted Victim R.C. to Iza's office and closed the door behind them.

While inside Iza's office with Victim R.C., Iza took steps to intimidate Victim R.C. in an effort to obtain $25,000. Specifically, Iza placed four or five rounds of live 9-millimeter ammunition on his desk. At the time, Iza was seated behind his desk in the office and across from Victim R.C. While speaking with Victim R.C., Iza picked up the live ammunition and twirled a bullet in his hand as he spoke to Victim R.C. in a threatening manner. During this meeting, Iza accessed Victim R.C.'s phone after Iza demanded that Victim R.C. wire $25,000 from Victim R.C.'s bank account to a bank account that Iza controlled. After the bank transfer occurred, defendant SIMPKINS and Deputy Cadman escorted Victim R.C. out of the mansion.

After the incident, Iza hired Saavedra & Associates to provide private security and made substantial payments to Saavedra and his employees. Iza made those payments through cash payments and wire transfers. Private security guards working for Saavedra & Associates accompanied Iza 24 hours per day, seven days a week during which they would often carry firearms and/or brandish their badges while accompanying Iza. Defendant SIMPKINS and Deputy Cadman each earned $1,400 total for their shifts during the August 14, 2021 party and the August 16, 2021 incident with Victim R.C. Because defendant SIMPKINS and Deputy Cadman helped secure a long-term contract, Saavedra & Associates paid defendant SIMPKINS and Deputy Cadman approximately 10 percent of the total profits earned for the first month of the contract.

***Defendant Obstructs the Administration of Justice***

On September 23, 2024, the FBI arrested Iza on a criminal complaint alleging violations of 18 U.S.C. § 241 (Conspiracy Against Rights) and 26 U.S.C. § 7201 (Evasion of Tax Assessments). The

complaint had been filed in the Central District of California and detailed a civil rights conspiracy, including events that occurred at the August 2021 party at Iza's mansion and the August 16, 2021 transfer of $25,000 from Victim R.C. to a bank account Iza controls. The criminal complaint alleges that inside Iza's office, Iza was seen loading bullets into a firearm magazine with a handgun on the desk and an AR-15 propped up against the side of the desk.  The criminal complaint alleges that Iza was displeased with the party and that in the presence of LASD deputies, Iza demanded a refund from Victim R.C. and forced the transfer of $25,000 from Victim R.C.'s bank account to an account Iza controls.  On October 22, 2024, a federal grand jury returned an indictment charging Iza with several federal crimes, including a civil rights conspiracy alleging overt acts related to the August 16, 2021 transfer of $25,000 from Victim R.C. to a bank account controlled by Iza.

On or about October 28, 2024, the FBI executed a search warrant on defendant SIMPKINS's person and seized his phone.  On or about November 7, 2024, defendant SIMPKINS participated in a proffer with FBI agents and prosecutors at the United States Attorney's Office for the Central District of California ("USAO") in Los Angeles, California.

At this meeting, defendant understood that FBI agents and prosecutors were engaged in a federal criminal investigation related to a judicial proceeding, namely, the criminal complaint and indictment against Iza.  Defendant further understood that investigators believed Iza and LASD deputies were criminally responsible for federal offenses.  At this time, defendant had reviewed the criminal complaint alleging a civil rights conspiracy

involving Iza and attachments A and B to the search warrant for defendant's phone that were left with defendant.  Attachment B discussed the relevant categories of evidence to be seized from defendant's phone, including evidence related to Iza, other LASD deputies, and civil rights offenses.

In connection with the November 7, 2024, meeting, defendant signed an agreement with the government in which he promised to "respond truthfully and completely to any and all questions put to your client at the meeting" and warned him that the USAO "reserves the right to use any statements or information provided by your client in any prosecution for false statements, obstruction of justice or perjury."  At the outset of the meeting, defendant was also admonished not to lie during the meeting.

During the November 7, 2024 meeting, defendant acted corruptly with the specific intent to obstruct and impede the criminal judicial proceeding against Iza and the criminal investigation into LASD deputies.  Specifically, defendant SIMPKINS acted corruptly by stating repeatedly to FBI agents and prosecutors that he saw no ammunition or shell casings inside Iza's office during the incident with Victim R.C.  Defendant SIMPKINS stated that he saw no financial transactions occur.  In fact, defendant SIMPKINS then knew that a financial transaction occurred inside Iza's office in the presence of rounds of live ammunition, and that Iza had twirled the ammunition in his hand while speaking to Victim R.C. in a threatening manner.  By concealing this information from investigators, defendant SIMPKINS corruptly obstructed the administration of judicial and investigative proceedings.  Further, defendant knew his lies had the natural and probable effect of interfering with the government's investigation

and its proceedings related to the criminal complaint filed against Iza.  Defendant also knew his lies were material, that is, the lies bore a reasonable relationship to the subject matter of the investigation and were not immaterial to the investigation.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:                14           U.S.S.G. § 2J1.2(a)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  This includes the USAO's right to argue that a three-level enhancement applies for substantial interference in the administration of justice under U.S.S.G. § 2J1.2(b)(2).

13.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.  Defendant

understands that at the time of sentencing, defendant may receive a two-level reduction in the applicable Sentencing Guidelines offense level if the Court determines that defendant qualifies as a zero-point offender as defined in U.S.S.G. § 4C1.1.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

12

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>LIMITED WAIVER OF DISCOVERY</u>

16.    Defendant understands that the government obtained additional material in this investigation that defendant has not been shown.  In exchange for the government's obligations under this agreement, defendant gives up any right he may have had to review the additional material, regardless of whether it is arguably exculpatory or inculpatory, and further agrees to waive any argument that the withholding of this material caused defendant's plea to be not knowing or involuntary.  The government agrees not to use at sentencing any of the withheld material without providing it to defendant.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

13

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 24 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 15 months, the USAO gives up its right to appeal any portion of the sentence.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

20. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410

14

of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

21. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

15

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

24.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits

16

both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

27. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

17

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States

_____     March 8, 2026
MAXWELL K. COLL                     _____
Assistant United States Attorney    Date
Deputy Chief, National Security
Division


_____     03/05/2026
SCOTT ALLEN SIMPKINS                _____
Defendant                           Date


_____     3/6/2026
CALEB MASON                         _____
Attorney for Defendant SCOTT ALLEN  Date
SIMPKINS

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     03/05/2026
SCOTT ALLEN SIMPKINS                 Date
Defendant

19

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am the attorney for SCOTT ALLEN SIMPKINS.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____                    3/6/2026
CALEB MASON                                        Date
Attorney for Defendant SCOTT ALLEN
SIMPKINS

20

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>SCOTT ALLEN SIMPKINS,<br><br>          Defendant. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1503(a): Obstruction of Justice] |

The United States Attorney's Office charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County through its thousands of sworn deputies.

2.    Defendant SCOTT ALLEN SIMPKINS was an LASD deputy and a sworn law enforcement officer.

3.    Adam Iza, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," and aka "Leo" ("IZA") was engaged in fraudulent marketing and cryptocurrency schemes.  IZA hired active-duty LASD deputies, including defendant SIMPKINS, to serve as his private security guards.

4.    Victim R.C. was an event planner based in Los Angeles who organized a party at IZA's mansion in the Bel Air neighborhood in August 2021.

2

COUNT ONE

[18 U.S.C. § 1503(a)]

On or about November 7, 2024, in Los Angeles County, within the Central District of California, defendant SCOTT ALLEN SIMPKINS, corruptly influenced, obstructed, and impeded, and attempted to influence, obstruct, and impede the due administration of justice, namely, the proceedings related to the criminal complaint filed against Adam Iza in Case No. 24-MJ-5809.  In particular, in a meeting with the Federal Bureau of Investigation and the United States Attorney's Office for the Central District of California, defendant SIMPKINS falsely stated that: (1) he saw no ammunition or shell casings inside Iza's office during the incident with Victim R.C.; (2) he did not see Iza take steps to threaten Victim R.C. to obtain money; and (3) he saw no financial transaction occur during the incident involving Victim R.C.

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney


ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Chief, Public Corruption and
Civil Rights Section

MAXWELL K. COLL
Assistant United States Attorney
Deputy Chief, National Security Division

3